IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KENNETH SWENSON, I, *et al.*, | : | Civil No. 1:22-CV-00635 |
| Plaintiffs, | : | |
| v. | : | |
| JUDGE CLYDE VEDDER, *et al.*, | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## **MEMORANDUM**

Before the court is the report and recommendation of United States Magistrate Judge Susan Schwab recommending that Judge Vedder's and Attorney Hoke's motions to dismiss be granted, that Attorney Spurlin's motion to dismiss be denied, and that the motion to dismiss filed by Attorney Fernandez, Kermit Card, Raymond Card, and Finkel & Fernandez be denied. (Doc. 42.) For the reasons that follow, the court will adopt the report and recommendation in its entirety.

### **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Neither party objected to the facts[1] or procedural history stated in the report and recommendation. Because the court gives "reasoned consideration" to these uncontested portions of the report and recommendation, the court will only restate

---

[1] While Plaintiffs purport to object to some of the background facts and procedural history as being erroneous, the court notes that upon review of the stated objections, they are simply additions to the factual background, or clarifications made to avoid what the facts "appear" to "imply." (*See* Doc. 50, pp. 2–3.) Accordingly, the court concludes that these are not proper objections to the facts stated in the factual background.

1

the factual background and procedural history necessary for clarity in this opinion. *E.E.O.C. v. City of Long Branch*, 866 F.3d 93, 99 (3d Cir. 2017) (quoting *Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987)).

This case centers around the history of the estate and guardianship of Ella Rubina Card ("Ms. Card"). (Doc. 42, p. 1.)[2] Ms. Card is now deceased, and the complaint in the instant case was filed by Ms. Card's daughters, Cindy Card ("Cindy") and Ladonna Card ("Ladonna"), as well as Ms. Card's son-in-law and Cindy's husband, Kenneth Swenson, I ("Swenson"). (*Id.*) Ms. Card also had two sons, Raymond Card ("Raymond") and Kermit Card ("Kermit"). (*Id.* at 2.) In 2011, Ladonna, Raymond, and Kermit filed an order to show cause and petition pursuant to Article 81 of the New York State Mental Hygiene Law for the appointment of a personal and property needs guardian for Ms. Card. (*Id.*) Ms. Card opposed the guardianship, but Judge Barros, who presided over the guardianship matter, determined that Ms. Card was incapacitated within the meaning of Article 81. (*Id.*)

Judge Barros appointed a property guardian to establish a monthly budget for Ms. Card's needs, for support of her dependents, and for her charitable inclinations. (*Id.*) Judge Barros appointed a nonprofit organization, the Vera

---

[2] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

Institute of Justice, Inc., as Ms. Card's property guardian. (*Id.* at 2–3.) No personal guardian was appointed. (*Id.* at 3.)

On January 3, 2013, Ms. Card attempted to remove the guardianship proceedings to the United States District Court for the Eastern District of New York, claiming constitutional violations. (*Id.*) The court concluded that it lacked subject matter jurisdiction because the bases Ms. Card offered for federal question jurisdiction were merely potential defenses dressed in constitutional trappings. (*Id.* at 3–4.) In 2014, Ms. Card moved to Pennsylvania, and in 2017, she filed a second removal action of the New York guardianship proceeding, this time in the United States District Court for the Middle District of Pennsylvania. (*Id.* at 4.) Again, the court concluded that it lacked subject matter jurisdiction, and the action was dismissed. (*Id.* at 4–5.)

The Vera Institute of Justice, Inc., terminated its guardianship role in July 2020. (*Id.* at 5.) The New York Supreme Court, Kings County, appointed Raymond and Kermit as co-guardians of Ms. Card's estate in an order dated July 21, 2020 ("2020 Guardianship Order"). (*Id.*)

On July 22, 2021, Ms. Card, Cindy, Ladonna, and Swenson filed a complaint in the United States District Court for the Middle District of Pennsylvania. (*Id.*) The amended complaint, filed September 15, 2021, also purports to be a removal of the guardianship proceedings, as well as a complaint

for civil rights violations. (*Id.* at 5.) In that matter, the judge issued an order adopting the report and recommendation of the magistrate judge recommending dismissal of the case for lack of subject matter jurisdiction and referred the case back to the magistrate judge for the purpose of deciding whether injunctive sanctions are appropriate, given the third frivolous removal attempt by the plaintiffs. (Id. at 5–6; *Matter of Card*, No. 1:21-CV-1288, 2022 WL 1592719, at *1 (M.D. Pa. May 19, 2022)). The issue of sanctions remains pending. (Doc. 42, p. 6.)

On February 11, 2022, Attorney Erik Spurlin ("Attorney Spurlin"), representing Kermit and Raymond, filed a petition in the York County Orphans' Court for hearing and enforcement of the 2020 Guardianship Order. (*Id.* at 6.) Judge Clyde Vedder ("Judge Vedder") presided over a hearing on the petition on March 21, 2022. (*Id.* at 7.) Swenson was subpoenaed to testify at the hearing, but neither Ladonna nor Cindy participated in the hearing. (*Id.* at 7–8.) During the hearing, it was revealed that Ms. Card died in Belize City, Belize on February 16, 2022, and that Swenson and Cindy had been serving as Ms. Card's attorneys in fact since at least 2018. (*Id.* at 8.) Accordingly, Judge Vedder issued an order the same day requiring Swenson and Cindy to file an account of their administration of Ms. Card's assets and estate with the court, and requiring Swenson to provide bank

statements to counsel and deliver the assets of the Estate to an appointed representative.  (*Id.*)

A little more than a month later, Plaintiffs filed the instant complaint, identifying as defendants: (1) Judge Vedder; (2) Attorney Spurlin; (3) Brandy Hoke ("Attorney Hoke"), who appeared during the March 2022 hearing on behalf of Ms. Card; (4) Julie Fernandez ("Attorney Fernandez"), a New York attorney who represented Kermit and Raymond in the July 2020 hearing; (5) Raymond; (6) Kermit; and (7) Finkel & Fernandez, LLP ("Finkel & Fernandez"), Attorney Fernandez's law firm.  (*Id.* at 8–9.)

In sum, Plaintiffs complain about the content of the petition filed with the Orphans Court, the jurisdiction of the Orphans Court to hear the petition because of the pending case in the District Court for the Middle District of Pennsylvania, the conduct by all counsel and Judge Vedder during the hearing, including during an in camera session, Judge Vedder's finding that Swenson and his attorney did not have standing to participate in the hearing, Swenson being compelled to testify at the hearing, the questioning of Swenson, and the lack of expert evidence and medical evaluations at the hearing.  (Doc. 42, pp. 9–12.)  Plaintiffs allege that the Defendants colluded to interfere with their civil rights and "perpetrated fraud on the court by injecting, knowingly allowing, promoting, acting upon deceitful

misrepresentations, unsupported allegations, and false information into the judicial process." (*Id.* at 12.)

The primary relief sought is the voiding of Judge Vedder's order. (*Id.* at 16.) Additionally, Plaintiffs seek: (1) the recusal of Judge Vedder from "this instance or [] any [involving] named Plaintiffs"; (2) a court order requiring Raymond and Kermit to produce certain accountings; (3) the issuance of a "preliminary injunction and temporary restraining order on" Attorney Fernandez, Attorney Spurlin, Attorney Hoke, Raymond, and Kermit "related to all activity associated with the Estate of Ella Card"; (4) a finding that the appointment of Kermit and Raymond as property guardians to Ms. Card is also void; (5) an order requiring Raymond and Kermit to "produce transitional accounting to" Cindy; (6) an order mandating the "immediate [] release of [] [Ms.] Card's asserts and estate to [Cindy] in accordance with the Will and Irrevocable Trust of [Ms.] Card"; (7) $500 million in damages for "pain, suffering, incessant torment, malicious prosecution, unlawful[] [imprisonment], degradation of quality of life, wrongful death, defamation of character, excessive cruel and unusual punishment, [and] extortion"; and (8) "Julie Fernandez sanctioned Cocoran Group/co-guardians cease collecting rent from 161 Saratoga, reimburse all rent collected thereunder and returned to the executor of the estate, Cindy [] with said lease terminated." (*Id.* at 16–17.)

Kermit, Raymond, Attorney Fernandez, and Finkel & Fernandez jointly filed a motion to dismiss, along with a brief in support. (Docs. 11, 14.) Plaintiffs filed a brief in opposition. (Doc. 15.) Judge Vedder also filed a motion to dismiss, along with a brief in support. (Docs. 12, 17.) Plaintiffs likewise filed a brief in opposition to Judge Vedder's motion. (Doc. 18.) Additionally, Attorney Spurlin filed a motion to dismiss, along with a brief in support. (Docs. 13, 19.) Plaintiffs filed a brief in opposition to Attorney Spurlin's motion to dismiss *before* the brief in support was filed. (Doc. 16.) However, because Plaintiffs had significant time to respond to the brief in support, Judge Schwab considered the brief in opposition despite the procedural misstep. (Doc. 42, p. 18, n.14.) Finally, Attorney Hoke filed a motion to dismiss. (Doc. 28.) In response, Plaintiffs filed a request for entry of default judgment against Attorney Hoke. (Doc. 29.) The request was based on service. Although Plaintiffs later filed an "affidavit in opposition" to the motion to dismiss, Doc. 36, Judge Schwab noted that the affidavit was merely a reply to Attorney Hoke's brief in opposition to Plaintiffs' request for entry of default judgment, and no true brief in opposition was ever filed to Attorney Hoke's motion to dismiss. (Doc. 19, p. 19.) Based on the procedural history of the case, Judge Schwab concluded that Plaintiffs were clearly aware of the requirement to file a brief in opposition to Attorney Hoke's motion to dismiss and would not be

prejudiced by the consideration of the motion to dismiss without a brief in opposition. (*Id.* at 19–20.)

Judge Schwab issued a report and recommendation that recommended: (1) Judge Vedder's motion to dismiss be granted because he is entitled to immunity pursuant to the Eleventh Amendment; (2) Attorney Hoke's motion to dismiss be granted for failure to state a claim upon which relief can be granted; (3) no leave to amend be granted; (4) Attorney Spurlin's motion to dismiss be denied because the *Rooker-Feldman* doctrine does not apply; (5) the motion to dismiss filed by Raymond, Kermit, Fernandez, and Finkel & Fernandez be denied because the *Rooker-Feldman* doctrine does not apply. (Doc. 42, pp. 23–37.)

Raymond, Kermit, Fernandez, and Finkel & Fernandez objected to the recommendation that their motion to dismiss be denied. (Docs. 45, 46.) Plaintiffs opposed the objection. (Doc. 49.) Plaintiffs filed an objection to the report and recommendation, objecting to the recommendation that Judge Vedder's and Attorney Hoke's motions to dismiss be granted. (Docs. 49, 50.) Attorney Hoke filed a response to Plaintiffs' objection. (Doc. 52.) All objections are ripe for resolution.

## STANDARDS OF REVIEW

**A. Review of Magistrate Judge's Report and Recommendation**

When a party objects to a magistrate judge's report and recommendation, the district court is required to conduct a de novo review of the contested portions of the report and recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989). The district court may accept, reject, or modify the magistrate judge's report and recommendation in whole or in part. 28 U.S.C. § 636(b)(1). The district court may also receive further evidence or recommit the matter to the magistrate judge with further instructions. *Id.* "Although the standard is de novo, the extent of review is committed to the sound discretion of the district judge, and the court may rely on the recommendations of the magistrate judge to the extent it deems proper." *Weidman v. Colvin*, 164 F. Supp. 3d 650, 653 (M.D. Pa. 2015) (citing *Rieder v. Apfel*, 115 F. Supp. 2d 496, 499 (M.D. Pa. 2000)). For the uncontested portions of the report and recommendation, the court affords "reasoned consideration" before adopting it as the decision of this court. *City of Long Branch*, 866 F.3d at 100 (quoting *Henderson*, 812 F.2d at 878).

**B. Motion to Dismiss**

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556).  "Conclusory allegations of liability are insufficient" to survive a motion to dismiss.  *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79).  To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief."  *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

## DISCUSSION

### A. The Uncontested Portions of the Report and Recommendation are Adopted.

The parties do not object to the following recommendation by Judge Schwab.  Judge Schwab recommends that Attorney Spurlin's motion to dismiss be denied, because the *Rooker-Feldman* doctrine does not apply where Plaintiffs were not a party to state-court proceedings who received an adverse ruling.  (Doc. 42, pp. 27–28.)  After giving "reasoned consideration" to the uncontested portions of

the report and recommendation, the court finds that Judge Schwab's analysis is well-reasoned and fully supported by the record and applicable law. *See City of Long Branch*, 866 F.3d at 99 (quoting *Henderson*, 912 F.2d at 878). Thus, the court will adopt this portion of the report and recommendation in full.

**B. The Court Adopts the Recommendation Granting Judge Vedder's Motion to Dismiss over Plaintiffs' General Objection.**

Plaintiffs object to the report and recommendation to the extent that Judge Schwab recommends granting Judge Vedder's motion to dismiss on the basis of Eleventh Amendment immunity. However, Plaintiffs' objection merely restates and rehashes the arguments that Judge Schwab considered and rejected in the report and recommendation. Since mere disagreement with the report and recommendation is not a basis to decline to adopt the report and recommendation, the court construes Plaintiffs' objection as a general objection.

When a party raises only a general objection to a report and recommendation, a district court is not required to conduct a de novo review of the report and recommendation. *Goney v. Clark*, 749 F.2d 5, 6–7 (3d Cir. 1984). "To obtain de novo determination of a magistrate's findings by a district court, 28 U.S.C. § 636(b)(1) requires both timely and specific objections to the report." *Id.* at 6. Thus, when reviewing general objections to a report and recommendation, the court's review is limited "to ascertaining whether there is 'clear error' or

11

'manifest injustice'" on the face of the record.  *Boomer v. Lewis*, No. 3:06-CV-00850, 2009 WL 2900778, at *1 (M.D. Pa. Sept. 9, 2009).

The court has reviewed Judge Schwab's report and recommendation and finds no clear error or manifest injustice on the face of the record.  Indeed, Judge Schwab's analysis is well reasoned and fully supported by the record and applicable law.  The fact that Plaintiffs disagree with the outcome of this analysis is not a basis to decline to adopt the report and recommendation.  Accordingly, the court adopts this portion of the report and recommendation over Plaintiffs' objection.

### C. The Court Adopts the Recommendation Granting Attorney Hoke's Motion to Dismiss over Plaintiffs' General Objection.

Plaintiffs object to the report and recommendation to the extent that Judge Schwab recommends granting Attorney Hoke's motion to dismiss for failure to state a claim upon which relief can be granted.  However, Plaintiffs' objection merely restates and rehashes the arguments that Judge Schwab considered and rejected in the report and recommendation.[3]  Since mere disagreement with the

---

[3] The court also notes that Plaintiffs had the opportunity to file a brief in opposition to Attorney Hoke's motion to dismiss and failed to do so.  The report and recommendation process does not entitle Plaintiffs to a second bite of the apple when they failed to raise and develop arguments before the Magistrate Judge.  *Dowell v. Bayview Loan Servs. LLC*, NO. 16-CV-2026, 2017 WL 4230924, at *2 n.1 (M.D. Pa. Sept. 25, 2017) (declining to address arguments not raised before the magistrate judge).

report and recommendation is not a basis to decline to adopt the report and recommendation, the court construes Plaintiffs' objection as a general objection.

When a party raises only general objections to a report and recommendation, a district court is not required to conduct a de novo review of the report and recommendation. *Goney v. Clark*, 749 F.2d 5, 6–7 (3d Cir. 1984). "To obtain de novo determination of a magistrate's findings by a district court, 28 U.S.C. § 636(b)(1) requires both timely and specific objections to the report." *Id.* at 6. Thus, when reviewing general objections to a report and recommendation, the court's review is limited "to ascertaining whether there is 'clear error' or 'manifest injustice'" on the face of the record. *Boomer v. Lewis*, No. 3:06-CV-00850, 2009 WL 2900778, at *1 (M.D. Pa. Sept. 9, 2009).

The court has reviewed Judge Schwab's report and recommendation and finds no clear error or manifest injustice on the face of the record. Indeed, Judge Schwab's analysis is well reasoned and fully supported by the record and applicable law. The fact that Plaintiffs disagree with the outcome of this analysis is not a basis to decline to adopt the report and recommendation. Accordingly, the court adopts this portion of the report and recommendation over Plaintiffs' objection.

### D. The Court Adopts the Recommendation Denying the Motion to Dismiss Filed by Raymond, Kermit, Fernandez, and Finkel & Fernandez over Plaintiffs' Specific Objection.

In support of their motion for summary judgment, Raymond, Kermit, Attorney Fernandez, and Finkel & Fernandez ("Objecting Defendants") argue that this complaint is an attempt to appeal a state court judgment unfavorable to Plaintiffs, over which federal courts are precluded from exercising jurisdiction pursuant to the *Rooker-Feldman* doctrine. (Doc. 14, pp. 5–14.) Objecting Defendants present brief argument on each of the four factors. (*Id.*) Plaintiffs offer no substantive argument relating to any of the four factors or that the *Rooker-Feldman* doctrine does not apply; rather, Plaintiffs argue that the court should not apply the *Rooker-Feldman* doctrine because of a "fraud exception." (Doc. 15, pp. 11–12.)

In the report and recommendation, Judge Schwab opined:

> Section 1257 of Title 28 of the United State Code confers on the United States Supreme Court appellate jurisdiction to review final judgments of the states' highest courts. Congress has not, however, "conferred a similar power of review on the United States District Courts." *Desi's Pizza, Inc. v. City of Wilkes-Barre*, 321 F.3d 411, 419 (3d Cir. 2003). "The *Rooker-Feldman* doctrine prevent district courts from mistakenly relying on their original jurisdiction to engage in appellate review of state-court orders." *Merritts v. Richards*, No. 19-1335, 2023 WL 2532055, at 5 (3d Cir. 2023) (precedential). "But th[e Supreme] Court has repeatedly emphasized that the doctrine is a narrow one that defeats federal subject-matter jurisdiction only under limited circumstances." *Vuyanich v. Smithton Borough*, 5 F.4th 379, 382 (3d Cir. 2021). "And [the Third Circuit has set forth] a precise four-pronged inquiry for when *Rooker-Feldman* should be invoked." *Id.* The *Rooker-Feldman*

14

doctrine applies when: "(1) the federal plaintiff lost in state court; (2) the plaintiff complain[s] of injures caused by [the] state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state court judgments." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (internal quotation marks omitted) (quoting *Exxon Mobile*, 544 U.S. at 284). "When even one of the four prongs is not satisfied, it is not proper to dismiss on *Rooker-Feldman* grounds. *Vuyanich*, 5 F.4th at 382.

The Supreme Court has made clear that *Rooker-Feldman* "does not defeat jurisdiction 'simply because a party attempts to litigate in federal court a matter previously litigated in state court' or even presents a claim that 'denies a legal conclusion' a state court has reached." *Id.* at 384. Rather, the *Rooker-Feldman* doctrine applies only when "the federal plaintiff lost in state court [.]" *Great Western Mining & Mineral Co.*, 615 F.3d at 166. "[A]s a general rule, the federal plaintiff must be a party to such a state-court proceeding and have received an adverse ruling. *Merritts*, 2023 WL 2532055, at *5. The Third Circuit case, *R.S. v. Butler County*, 700 Fed. Appx. 105 (3d Cir. 2017), illuminates this principal. In this case, after R.S., a minor child, was ordered detained for "five days in a juvenile detention facility[,]" R.S. and his parents sued those involved in this detention. *Id.* at 107. "On *Rooker-Feldman*'s first requirement, [the Court found] that the child lost in state court." *Id.* at 108. The child's parents, however, "were not parties to the child's juvenile case." *Id.* Accordingly, the Court found that "*Rooker-Feldman* does not apply to the parents' claims, as the parents did not lose in state court." *Id.*

Similarly, in the instant case, the plaintiffs were not parties to the March 2022 hearing. In fact, the Judge informed Swenson that he did not have standing in the proceedings and instead was only present as a witness. *See, e.g., id.* at 6–7. These non-party plaintiffs are thus not "state court losers" unless an exception applies. *See Merritts*, 2023 WL 2532055, at *6 ("But in limited instances, a non-party to the state-court judicial proceeding may be a state-court loser for purposes of *Rooker-Feldman*"). The defendants fail to argue that any exceptions apply to this case. And as presently presented to the court, it does not appear that any exception applies. *See id.* (describing exceptions for subpoena litigation, successor liability, privity, and *in rem* actions). We,

15

>therefore, conclude that the *Rooker-Feldman* [doctrine] does not apply and will not recommend that the court dismiss the claims on this basis.

(Doc. 42, pp. 26–28.)

Objecting Defendants object to this conclusion, arguing that Swenson initially sought to dismiss the Orphans' Court petition, but the motion was denied by Judge Vedder, who found that Swenson lacked standing to seek dismissal of the petition. (Doc. 46, p. 9.) Additionally, at the March 2022 hearing, Swenson testified that he and Cindy Card were agents of Ms. Card under a power of attorney. (*Id.*) Objecting Defendants contend that Swenson's testimony established that he and Cindy were parties who had specific, legal roles regarding the estate of Ms. Card, and that the Orphans' Court had jurisdiction over them as agents under a power of attorney. (*Id.* at 9, 11.) Additionally, Objecting Defendants argue Judge Vedder's order compelling the accounting was directed to Swenson and Cindy as agents under the power of attorney Ms. Card signed. (*Id.* at 9.) Finally, Objecting Defendants assert that *R.S. v. Butler County*, relied upon by Judge Schwab in the report and recommendation, is distinguishable because a statute limited the definition of the term "parties" in a juvenile case to the juvenile and the Commonwealth, thus the parents were able to bring their claims in a federal action. (*Id.* at 11–12.) Thus, Objecting Defendants argue that the first *Rooker-Feldman* element has been met. (*Id.*)

In response, Plaintiffs reject Objecting Defendants' arguments and reiterate their argument, already rejected by Judge Schwab, for application of the fraud exception to the *Rooker-Feldman* doctrine. (Doc. 51, pp. 1, 6, 9–11.)

As noted by Judge Schwab in her report and recommendation, it is well established that when applying *Rooker-Feldman*, it is generally required that one be a party to the underlying state litigation, with a few narrow exceptions. (Doc. 42, pp. 26–28.) Objecting Defendants are presenting an argument in their objection that Plaintiffs, though not parties in the underlying state court litigation, should qualify as "state court losers" for *Rooker-Feldman* purposes based on an agency theory. However, they have not supported this assertion with any case law. The court was unable to locate any precedent extending *Rooker-Feldman* to a non-party based on an agency theory. Moreover, the court notes that the instant case is before the court for a report and recommendation on motions to dismiss. The complaint is devoid of allegations that Plaintiffs were acting as Ms. Card's agents during the Orphans' Court hearing. Thus, even if there were precedent extending *Rooker-Feldman* to a non-party based on an agency theory, the facts alleged in the complaint would not support dismissal of the claims against Objecting Defendants on that basis. Accordingly, the court will overrule Objecting Defendants' objection and adopt this portion of the report and recommendation in

its entirety.  Objecting Defendants' motion to dismiss will be denied, as the case is not barred by the *Rooker-Feldman* doctrine.

## CONCLUSION

For the reasons stated herein, the court will adopt the report and recommendation of Judge Schwab in its entirety.  An appropriate order will issue.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: August 24, 2023